646 So.2d 1108 (1994)
Rena NIVEN
v.
BOSTON OLD COLONY INSURANCE COMPANY, et al.
No. 94-CA-348.
Court of Appeal of Louisiana, Fifth Circuit.
November 16, 1994.
Writ Denied February 9, 1995.
*1109 Matthew P. Chenevert, Herman, Herman, Katz & Cotlar, New Orleans, for plaintiff/appellant.
Christopher E. Lawler and Kevin K. Gipson, Donovan & Lawler, Metairie, for defendants/appellees.
Before GRISBAUM, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
This is an appeal of a trial court decision, granting summary judgment in favor of two defendants and dismissing them from the lawsuit. For the following reasons, we affirm.

FACTS
On the evening of February 16, 1988, plaintiff/appellant, Rena Niven, was a passenger in an automobile which was involved in a multi-car collision on Interstate 10, in the area where it overpasses Veterans Memorial Boulevard in Metairie, Louisiana. Ms. Niven and others involved in the accident exited their vehicles and waited for the police to arrive. While waiting on the overpass, a 1984 Dodge Conquest being driven by one of the defendants in this matter, James Ray, collided into the stationary vehicles. Ms. Niven alleges that this subsequent collision caused her to fall over the railing of the overpass and onto the ground approximately thirty feet below. As a result of her fall, Ms. Niven sustained injuries including paralysis in the lower half of her body.
On December 8, 1988, Ms. Niven filed suit in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, against, inter alia, Mr. Ray and his liability insurer, Boston Old Colony Insurance Company. Via a fourth supplemental and amending petition, Ms. Niven added as defendants, Chrysler Credit Corporation (Chrysler Credit), the owner of the Conquest, which was being leased to Mr. Ray, and Allstate Insurance Company (Allstate), which held two policies of insurance on the Conquest, in favor of Chrysler Credit.
On October 5, 1992, Chrysler Credit and Allstate (the defendants) filed a motion for summary judgment, asserting that Mr. Ray was not covered by the policies of insurance held by Allstate, and that there was no basis for Ms. Niven's other claims against Chrysler Credit (essentially "negligent entrustment" claims). On November 25, 1992, the trial court rendered judgment, granting the defendants' motion for summary judgment and dismissing plaintiff's suit against them, with prejudice. It is from this judgment that plaintiff appeals, asserting that the omnibus provisions of Louisiana's mandatory insurance law require the reformation of Allstate's insurance policy to grant coverage to Chrysler Credit's lessee (Mr. Ray) and that Chrysler Credit knew or should have known that Mr. Ray's driving record was so poor that its failure to cancel his lease constituted negligent entrustment[1].

APPLICABILITY OF LSA-R.S. 32:900
LSA-R.S. 32:900, which forms part of the Louisiana Motor Vehicle Safety Responsibility Law (L.M.V.S.R.L.)[2], provides in pertinent part:
Sec. 900. "Motor Vehicle Liability Policy" defined

*1110 A. A "Motor Vehicle Liability Policy" as said term is used in this Chapter, shall mean an owner's or an operator's policy of liability insurance, certified as provided in R.S. 32:898 or 32:899 as proof of financial responsibility, and issued except as otherwise provided in R.S. 32:899, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.
B. Such owner's policy of liability insurance:
(1) Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and
(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs with respect to each such motor vehicle as follows:
(a) Ten thousand dollars because of bodily injury to or death of one person in any one accident, and,
(b) Subject to said limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and
(c) Ten thousand dollars because of bodily injury to or destruction of property of others in any one accident.
(d) An owner may exclude a named person as an insured under a commercial policy if the owner obtains and maintains in force another policy of motor vehicle insurance which provides coverage for the person so excluded which is equal to that coverage provided in the policy for which the person was excluded.
The alternative coverage is required for both primary and excess insurance.
C. Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.
Plaintiff argues that LSA-R.S. 32:900 B(2) requires that the Allstate policies provide coverage for Mr. Ray, notwithstanding the existence of the Boston Old Colony policy. We disagree. As stated by the Louisiana Supreme Court in Hearty v. Harris, 574 So.2d 1234, 1239 (La.1991):
the plaintiff fail[s] to discern the distinction between a "motor vehicle liability policy" and an "automobile liability policy." The term "motor vehicle liability policy" is defined by La.R.S. 32:900(A) as "an owner's or an operator's policy of liability insurance, certified as provided in R.S. 32:898 or 32:899 as proof of financial responsibility, and issued ... by an insurance carrier duly authorized to transact business in this state...." By purchasing a "motor vehicle liability policy" an owner or operator satisfies the requirements of the LMVSRL. In contrast, an "automobile liability policy" is a voluntary policy which has not been certified as proof of a motorist's financial responsibility and does not therefore satisfy the requirements of the LMVSRL.
A [sic] language of La.R.S. 32:900(B)(2) clearly indicates the mandatory omnibus clause requirement applies only when the liability policy in question is certified and used as proof of financial responsibility. New Zealand Ins. Co. v. Holloway, 123 F.Supp. 642 (W.D.La.1954); Gotreaux v. Travelers Ins. Co., 299 So.2d 466 (La.App. 3rd Cir.), writ denied, 302 So.2d 309 (La. 1974); Johnson v. Universal Automobile Ins. Ass'n, 124 So.2d 580 (La.App. 3rd Cir.1960). La.R.S. 32:900(B)(2) does not affect the terms of a voluntary "automobile liability policy" which was not obtained to comply with the requirements of the LMVSRL. (citations omitted).
In the matter before us, the two pertinent Allstate policies were effective from January 1, 1988, through January 1, 1989, and covered *1111 over 150,000 automobiles. The policies, copies of which are included in the designated record before us, are identical except for the several "endorsements" attached to each policy. The first Allstate policy (the primary policy), which had policy limits of $100, 000/$300,000/$50,000, provided in its Endorsement No. 5, under the heading "Automobile Liability Insurance":
It is agreed that such insurance as is afforded by the Business Auto Coverage Form Liability Coverage applies to all autos as defined in Section 2 (Application of Insurance) herein, subject to the following provisions:
1. Definition of Insured. With respect to insurance afforded by this endorsement the unqualified word "Insured" includes only the Named Insured as stated in Declaration Number 1[3], and Chrysler Corporation as respects their interests.
2. Application of Insurance. Insurance afforded by this endorsement applies only to autos owned and leased to others by the Named Insured pursuant to a lease agreement which provides for the exclusive use of the auto by the lessee for a period of no less than twelve consecutive months, and, which provides that said lessee will secure and maintain in force a policy of Bodily Injury Liability and Property Damage Liability insurance for the duration of the lease agreement.
3. Coverage
A. LIABILITY COVERAGE provided by this endorsement for a covered "auto" which is a "leased auto" applies subject to the following provisions:
1. If there is no other available insurance, (whether primary, excess or contingent) the LIMIT OF INSURANCE is the minimum limit required by any applicable compulsory or financial responsibility law.
2. If there is other available insurance, (whether primary, excess or contingent), the LIMIT OF INSURANCE is only for the amount by which the applicable compulsory or financial responsibility law limits exceed the limits of the available insurance.
* * * * * *
7. Insurance Certification. The Named Insured shall purchase, subscribe to or otherwise secure and maintain a service or program which is designed to verify that the lessee has purchased a primary insurance policy for limits of no less than ...
$100,000 Bodily Injury Liability, each person
$300,000 Bodily Injury Liability, each accident
$50,000 Property Damage Liability, each accident
... and that such insurance policy provides for ten days prior written notice to the Named Insured, of cancellation of such policy.
The second Allstate policy (the excess policy) provided in its Endorsement No. 4:
It is agreed that the insurance afforded by the policy for Bodily Injury and Property Damage Liability shall be excess insurance over any other valid and collectible insurance.
Paragraph 1. WHO IS INSURED of SECTION IILIABILITY COVERAGE applies except that none of the following is an "insured:"
a. The lessee or rentee;
b. Any employee or agent of the lessee or rentee; and
c. Any person operating an "auto" with the permission of any of the above.
It is well settled that an insurance policy is a contract, which constitutes the law between the parties. If the wording of the policy is clear and expresses the parties' intent, the policy must be enforced as written. This rule is applicable even to policy provisions which limit the insurer's liability or place restrictions on policy obligations, unless the provision conflicts with statutes or public policy. Pareti v. Sentry Indem. Co., 536 So.2d 417, 420-421 (La.1988). Absent such a conflict, insurers are entitled by *1112 agreement with the insured to limit their liability and impose reasonable conditions upon the obligations assumed in a given policy. Krider v. Dixon, 609 So.2d 1089, 1090 (La.App. 2nd Cir.1992).
We find that the wording of both Allstate policies are clear and express the parties' intent that the primary policy covers the liability of the lessee (for the minimum amount required by law$10,000/$20,000/$10,000) only if the lessee fails to satisfy his requirement of the lease agreement to purchase and maintain liability insurance.[4] We note in the record a copy of the "Retail Lease Agreement" between Clearview Dodge Sales, Inc. and Mr. Ray, which provided for a 48 month lease of the Conquest to Mr. Ray and in which Mr. Ray agreed to purchase liability insurance in the amount of $100,000/$300,000/$50,000. We further note that none of the parties to this appeal contest the fact that Mr. Ray had in full force at the time of the accident a policy of liability insurance written for the requisite amount of $100,000/$300,000/$50,000 by Boston Old Colony Insurance Company. Pursuant to Hearty, supra., we therefore find that the Boston Old Colony Policy was the "motor vehicle liability policy" which satisfied the requirements of the L.M.V.S.R.L. and that the Allstate policies were voluntary policies which did not satisfy the requirements of the L.M.V.S.R.L.
We do not agree with plaintiff's argument that this rationale conflicts with Louisiana's compulsory liability insurance and omnibus coverage provisions. LSA-R.S. 32:861(A) requires that every motor vehicle registered in this state, with limited exceptions, shall be covered by an automobile liability policy with the minimum liability limits set forth in LSA-R.S. 32:900(B)(2). LSA-R.S. 32:900(B)(2) requires that a motor vehicle liability policy provide liability coverage to the named insured (either an owner or an operator) and any other person using a covered vehicle with the express or implied permission of the named insured. Neither of these provisions requires that an owner/lessor's liability policy provide coverage to a lessee for all risks while driving the leased vehicle. We have not been referred to any statute, nor do we know of any, which would require the Allstate policies as written to include coverage for Mr. Ray. Further, an
[e]xamination of R.S. 32:861 et seq., and particularly Sections 863-865, the penalty provisions for noncompliance with insurance requirements, does not lend support to the argument that [the owner/lessor's] duty was non-delegable. On the contrary, the use throughout the statutes of the phrases "owner or lessee", "applicant", "owner or owner's lessee" indicates that the intent of the Legislature was just the opposite, that the duty of obtaining and maintaining liability insurance falls upon the appropriate person in a given situation. The lease in question here ... clearly stated that the lessee was to procure and maintain the insurance on the vehicle. Thus, the duty of complying with the statutes' requirements on insurance fell to the lessee ... not the lessor in this instance. Washington v. Stephens Leasing, Inc., 540 So.2d 433, 435 (La.App. 1st Cir.1989).

NEGLIGENT ENTRUSTMENT
Plaintiff further argues that a claim exists against Chrysler Credit for negligent entrustment of its vehicle to Mr. Ray, that Chrysler Credit breached a duty to monitor Mr. Ray's driving record, and that therefore, Chrysler Credit was a cause-in-fact of the accident and subsequent injuries to Ms. Niven. We find no legal basis for these arguments.
Plaintiff argues that since Clearview Dodge granted a full assignment of the lessor's rights and duties to Chrysler Credit via the lease with Mr. Ray, that Chrysler Credit assumed a duty to protect the public from the negligence of Mr. Ray. Plaintiff asserts that Mr. Ray received two citations for speeding in the two years prior to the accident, that Mr. Ray's blood alcohol level was above the legal limit at the time of the accident, *1113 and that it was therefore not "reasonable for Chrysler Credit to not avail itself of the lease provisions upon Ray's repeated illegal use of the vehicle, and thereby take the vehicle away from Ray." Plaintiff cites certain portions of the lease agreement which gave Chrysler Credit the right to terminate the lease and repossess the vehicle if Mr. Ray defaulted by failing to comply with any condition of the lease, including the requirement that Mr. Ray "not use the vehicle illegally."
It is well entrenched in Louisiana law that the negligence of a lessee in the exclusive physical control of the object of the lease cannot be imputed to the lessor. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). The exceptions to this rule recognized in Ruthardt v. Tennant, 252 La. 1041, 215 So.2d 805 (1968), i.e., that the driver of the leased vehicle was on a mission for the owner or that the lessor/owner was himself negligent in allowing the lessee to use the vehicle, are not applicable herein. Delaney v. Agency Rent-A-Car, Inc., 616 So.2d 869, 870 (La. App. 3rd Cir.1993); see also Harris v. Hamilton, 569 So.2d 1 (La.App. 4th Cir.1990).
In the matter before us, Mr. Ray had the exclusive use and control of the Conquest for approximately three and a half years prior to the accident. At the time the lease was executed, Mr. Ray met all of the requirements necessary to lease the vehicle (i.e., valid Louisiana driver's license, proof of liability insurance, available funds to satisfy the lease, etc.). We are aware of no duty under the law or jurisprudence for an owner/lessor of a vehicle to monitor the driving records of his lessee and terminate the lease if traffic violations occur. Moreover, Chrysler Credit's right under the lease agreement to terminate the lease if Mr. Ray used the vehicle illegally did not impose upon them an affirmative duty to monitor Mr. Ray's driving record and terminate his lease for traffic violations. Absent a showing that Chrysler Credit exercised any control over Mr. Ray as lessee or any privity of contract with him beyond the lease agreement, Mr. Ray's negligence cannot be imputable to Chrysler Credit as the owner or lessor. Davis v. Eckert, 454 So.2d 275 (La.App. 4th Cir.1984). Since no negligence of Chrysler Credit exists, Chrysler Credit cannot be a cause-in-fact of the accident. See Dixie Drive It Yourself Sys., supra, 137 So.2d at 302.
For the foregoing reasons, the judgment of the trial court, granting summary judgment in favor of Chrysler Credit Corporation and Allstate Insurance Company, and dismissing them from the lawsuit, is hereby affirmed.
AFFIRMED.
NOTES
[1] Other "issues" listed by plaintiff on appeal are: "Did Chrysler Credit breach a duty by failing to monitor its lessee's driving record?" and "Was Chrysler Credit a cause-in-fact of Mrs. Niven's damages?" Because plaintiff's negligent entrustment claim also encompasses these last two "issues", all three will be analyzed under the heading "Negligent Entrustment."
[2] LSA-R.S. 32:851-32:1043.
[3] The "Named Insured" are Chrysler Financial Corporation, Chrysler Credit Canada Ltd., Chrysler Credit Corporation, Chrysler Canada, Ltd., American Motors Financial Corporation, and AM Credit Corporation.
[4] After a thorough review of the Allstate policies, it is apparent that their primary purpose was to provide liability coverage for Chrysler Credit during the times when the covered vehicles were in the use and control of Chrysler Credit (i.e., at times prior to the vehicles' transfer to their lessees and subsequent to their return from their lessees).