Judgment rendered May 25, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,465-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KELLEY D. WYATT and                          Plaintiffs-Appellants
JEFFREY L. WYATT, Individually
and on Behalf of Their Children,
JACOB L. WYATT and MADISON
P. WYATT

versus

BRODIE M. LEROY                              Defendant-Appellee

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 151,512

Honorable E. Charles Jacobs, Judge

* * * * *

RYAN E. GATTI                                Counsel for Appellants

WANEK, KIRSCH, DAVIES, LLC
By:  Kyle P. Kirsch
     Emma Madison Barton
     Sara Madaline Day

PETTIETTE, ARMAND, DUNKELMAN,                Counsel for Appellee,
WOODLEY, BYRD & CROMWELL, L.L.P.             Sentry Insurance
By:  Donald James Armand, Jr.                Company
     Thomas A. Pressly, IV
     Marshall Louis Perkins

CHAFFE MCCALL, LLP                        Counsel for Appellee,
By: Douglas Lanaux Grundmeyer           ACE Property and
     Peter Joseph Rotolo, III            Insurance Company
     Leah Nunn Engelhardt
     Charles Donald Marshall, III
     Thomas Harrison Prince
     David A. Pote

COOK, YANCEY, KING
& GALLOWAY
By: Brian Allen Homza

WIENER, WEISS & MADISON, APC            Counsel for Appellees,
By: Franklin H. Spruiell, Jr.            Progressive Paloverde
                                         Insurance Company and
                                         Brodie M. Leroy

GUGLIELMO, LOPEZ, TUTTLE,                Counsel for Appellee,
HUNTER & JARRELL, L.L.P.                 Allmerica Financial
By: Gina Marie Bradley Tuttle           Benefit Insurance
                                         Company

\* \* \* \* \*

Before STEPHENS, ROBINSON, and HUNTER, JJ.

**ROBINSON, J.**

Kelley D. Wyatt ("Kelley") and Jeffrey L. Wyatt ("Jeffrey"), husband and wife, individually and on behalf of their children, Jacob L. Wyatt ("Jacob") and Madison Paige Wyatt ("Madison"), collectively referred to as "the Wyatts," originally sued Brodie M. Leroy ("Leroy") and Leroy's liability insurer, Progressive Insurance Company ("Progressive"). The Wyatts later added as Defendants, Sentry Insurance, A Mutual Company ("Sentry"), the alleged uninsured/underinsured motorist ("UM") insurer for the vehicle, and ACE American Insurance Company ("ACE"), the excess coverage insurer. The Wyatts sought damages for extensive injuries suffered by Kelley in an automobile collision caused by the undisputed negligence of Leroy while Kelley was driving a rental vehicle leased by her employer inVentiv Commercial Services LLC ("inVentiv").

Both the Wyatts and Sentry moved for summary judgment based on whether Sentry owed UM coverage to the Wyatts. The trial court denied the Wyatts' motion and granted Sentry's motion, finding there was no genuine issue of material fact since the insurance policy was clear that the vehicle driven by Kelley was not covered. The Wyatts appeal that judgment.

For the following reasons, we AFFIRM.

## FACTS AND PROCEDURAL HISTORY

Kelley, a Louisiana resident, was involved in a severe automobile accident on Airline Drive in Bossier City on September 4, 2016, while driving a rental car provided by her employer, inVentiv, when Leroy suddenly and unexpectedly crossed the center lane of travel and collided

with her head-on. Leroy admitted he was intoxicated and a blood alcohol test showed blood alcohol content of .09%.

Leroy later pled guilty to first degree-negligent injuring. Leroy's liability and the Wyatt's entitlement to punitive damages is undisputed. The only insurance available to Leroy at the time of the crash was a Progressive liability policy, which provided coverage of $15,000 per person/$30,000 per accident/$30,000 in property damage per accident.

Kelley's medical records revealed her numerous and significant injuries, including but not limited to, severe brain injury, multiple fractures, deep vein thrombosis, sepsis, tracheotomy, and speech and hearing damage.

Kelley's W-2s showed earnings of approximately $1,960/week. Expert reports demonstrated lost wages/earning capacity of approximately $2.2-2.6 million and future medical care costs of approximately $7.4-9.5 million.

At the time of the accident, Kelley was working for inVentiv, a subsidiary of inVentiv Group Holdings, Inc. and inVentiv Health, Inc. She was driving an Enterprise rental vehicle, rented and insured by inVentiv, while she awaited delivery of her leased vehicle from inVentiv. inVentiv purchased its primary automobile liability policies through Sentry, including for the policy periods of December 1, 2015, through December 1, 2016. Sentry issued three commercial auto policies to inVentiv Group Holdings, Inc, the two at issue being policies 90-15539-10 ("the AOS policy") and 90-15539-11 ("the Massachusetts policy"), which covered all inVentiv-affiliated entities.

In granting Sentry's motion for summary judgment, the trial court found that the Massachusetts policy "covered the state of Massachusetts" and only "cover[ed] approximately 50 vehicles principally garaged in that state," while the AOS policy covered "all other states" or "AOS". An uninsured/underinsured motorist coverage rejection form was executed for the AOS policy. In sum, the trial court held that there was no UM coverage for the rental vehicle inVentiv provided to Kelley under either the AOS policy or the Massachusetts policy.

## SUMMARY OF ARGUMENTS

### *Massachusetts Policy "Exclusion of Certain Vehicles" Provision*

The Wyatts assert that the trial court erred by relying on the "Exclusion of Certain Vehicles" provision of the Massachusetts policy to bar coverage because Sentry did not meet its burden of proving the applicability of the exclusion. In their analysis, they cite *Huggins v. Gerry Lane Enter., Inc.,* 05-2665 (La. App. 1 Cir. 11/03/06), 950 So. 2d 750, arguing that "an exclusionary clause in an insurance policy must be strictly construed, and it should be read as a whole with the other policy provisions." In addition, because the ambiguity relates to an exclusionary clause, Louisiana law requires that the Massachusetts policy be interpreted liberally in favor of coverage. *Borden, Inc. v. Howard Trucking Co.,* 454 So. 2d 1081, 1090 (La. 1983); *Maldonado v. Kiewit Louisiana Co,* 13-0756 (La. App. 1 Cir. 3/24/14), 146 So. 3d 210, 218; *Shaw v. Fidelity & Cas. Ins. Co.,* 582 So. 2d 919, 925 (La. App. 2 Cir. 1991). The Wyatts claim that had the trial court used these principles and strictly construed the exclusion in their favor, it would have concluded that the Massachusetts policy provided coverage.

3

The Wyatts assert that Sentry provided no evidence to support that the vehicle was "specifically insured" under the AOS policy so as to meet the terms of the Massachusetts policy exclusion and preclude coverage. They claim Sentry cannot establish the vehicle was "specifically insured" by the AOS policy because: (1) the policy contains no lists/schedules; (2) the vehicle is a non-owned vehicle; (3) when the exclusion provision is "read *in pari materia* with the other provisions of the [Sentry] policy" it is clear the vehicle Kelley was driving was not "specifically insured"; (4) Sentry failed to provide any evidence showing the subject vehicle was one of the vehicles covered by the policy; and (5) a strict construction of the exclusion indicates "specifically insured" does not mean "actually insured" as Sentry contends.

Further, the Wyatts urge that the trial court erred in not requiring Sentry to provide evidence of where the rental vehicle at issue was principally garaged. In order for the Massachusetts policy's "Exclusion for Certain Vehicles" to apply in this case, Sentry must establish the vehicle at issue was "principally garaged" in a state other than Massachusetts.

The Wyatts claim that the trial court erroneously found that, because Kelley was domiciled in Bossier Parish, "there is no question that the vehicle was principally garaged in a state other than Massachusetts; Louisiana." The Wyatts argue that as a matter of law, this is an incorrect finding because courts have held that "[W]hile the automobile in question was certainly located in Louisiana, this is not synonymous with the term 'principally garaged.'" *Decatur v. US. Fidelity & Guar. Co.* 464 So. 2d 854 (La. App. 5 Cir. 1985). They claim that the vehicle driven by Kelley on the date of the accident was a non-owned, rental vehicle, and thus, by its very nature, not

4

"principally garaged" anywhere. Nevertheless, Sentry failed to introduce any evidence on the issue.

Sentry claims the term "specifically insured" is not a defined term in the policies. Thus, the rules of construction require that the term be given its ordinary meaning – if a vehicle is covered under one of the Sentry policies, it is not covered under the others. Courts construe parties' interrelated contracts together and in a commercially reasonable manner. *Finkel v. Texas-Edwards, Inc.,* 295 So. 2d 903 (La. App. 2 Cir. 1974).

Sentry argues that the Wyatts' argument that the vehicle is not specifically listed in the AOS policy, resulting in the inapplicability of the Massachusetts policy exclusion, is without merit. It asserts that all auto insurance policies insure certain vehicles that are not identified by make, model or VIN, which is essential. Personal auto policies that list specific vehicles also extend coverage to classes of vehicles that are not specifically listed: newly acquired autos, temporary substitute autos, trailers, etc. The majority of commercial auto policies do not use schedules or lists of autos but use symbols describing different coverage classifications.

In addition, Sentry argues that the record evidence concerning the location of the Wyatt vehicle before and at the time of the accident establishes that it was principally garaged in Louisiana. The Wyatts specifically alleged that the vehicle was provided to Kelley as part of her compensation, that she used it full time for personal and business reasons, and that Kelley was domiciled in Bossier Parish. The normal meaning of the words "principally garaged" means the place where the vehicle is usually kept. The law is clear in Massachusetts and Louisiana that courts should

5

construe words in an insurance policy in accordance with their commonly understood meaning. *Pink v. Great N. Ins. Co.,* No. 952085, 1996 WL 1353293 (Mass. Super. Aug. 12, 1996); *Hebert v. Bardwell*, 2011-1220 (La. App. 1 Cir. 2/10/12), WL 602128 (unpublished opinion). Louisiana courts have routinely made rulings that explicitly or implicitly find that cars rented and used in Louisiana are "principally garaged" in Louisiana. If Louisiana law were applicable, the result would be that the Wyatt vehicle was principally garaged in Louisiana.

### Application of Louisiana law

The trial court held that the Massachusetts policy "covered the state of Massachusetts" and only "cover[ed] approximately 50 vehicles principally garaged in that state. Because UM coverage is required in Massachusetts, no UM rejection form was executed as to the Massachusetts policy. The Wyatts argue that the trial court erred in finding that Louisiana law didn't apply to coverage under the Massachusetts policy because (1) Louisiana had the most significant contacts of the parties, witnesses and accident, (2) there was no finding of significant contacts with Massachusetts, and (3) it failed to take into consideration Louisiana's strong public policies of (a) fully compensating the innocent accident victim, (b) Louisiana governmental interests in governing awards of victims of accidents occurring on its highways, and (c) Louisiana residents outweighing another state's interest.

The Wyatts argue that the facts of this case are analogous to the circumstances addressed by this Court in *Adams v. Thomason,* 32-728 (La. App. 2 Cir. 03/01/00), 753 So. 2d 416, where it was held that Louisiana law applied, given the following facts:

6

Rodney Grubisic was a resident of Wisconsin, and the State Farm policy on his truck was issued in Wisconsin. However, he was working in Louisiana. The accident occurred in Richland Parish, Louisiana. Furthermore, several Louisiana residents were involved in and affected by the accident; they include Adams, the injured party; Adcock, the driver of the truck pulling the cotton trailer which hit Adams; and Thomason, the owner of the truck Adcock was driving.

The court in *Adams* concluded that "[I]nasmuch as the plaintiff and the defendant tortfeasor are Louisiana residents, the accident occurred in Louisiana, and the defendant whose insurance at issue was working in Louisiana, we find that Louisiana had compelling interests that superseded those of Wisconsin and would be adversely affected if Louisiana law were not applied." *Id*. In arriving at this conclusion, the *Adams* court recognized "Louisiana has a substantial interest in regulating awards to victims injured on its highways and in protecting those persons from uninsured and underinsured motorists. Consequently, [the court found] that Louisiana law is applicable to the State Farm policy." *Id*.

The Wyatts claim that *Adams* demonstrates Louisiana law should apply to this case because: (1) Plaintiffs are domiciled in Louisiana; (2) the employment contract by which Kelley received the Enterprise rental vehicle she was driving as part of her employment benefits was issued and delivered in Bossier City, Louisiana; (4) the accident occurred in Louisiana; (5) Leroy was a resident of Bossier City, Louisiana, at the time of the accident; (6) inVentiv hired Kelley to perform work on its behalf in Louisiana; (7) Kelley's employer knew she would be using the vehicle in Louisiana as it charged "a personal use deduction of $67.50" from her "biweekly pay"; and (8) much of Kelley's medical treatment has been in Louisiana.

7

The Wyatts argue that Sentry failed to provide evidence establishing any contacts to Massachusetts for Massachusetts law to apply. It merely cites the provision in the Massachusetts policy that coverage is provided for 51 vehicles principally garaged in Massachusetts. Further, the description of covered automobiles in said policy refers only to "Any 'Auto.'"

In addition, the Wyatts argue that the Sentry policy language contemplated out-of-state law applying given it applied to a fleet of vehicles, provided nationwide coverage, and had out-of-state coverage extension provisions. The Wyatts cite several cases in which courts have held that Louisiana law has applied as to coverage in situations where a policy was issued in another state, but there were significant contacts in Louisiana. *Dunlap v. Hartford Ins. Co.*, 907 So. 2d at 126; *Boutte v. Fireman's Fund County Mut. Ins. Co.,* 06-34 (La. App. 3 Cir. 05/10/06), 930 So. 2d 305; *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, 2011 WL 13162046 (W.D. La. 2011).

In support of its contention that Massachusetts law would apply as to the Massachusetts policy, Sentry cites *Champagne v. Ward,* 2003-3211 (La. 1/19/05), 893 So. 2d 773, in which the Supreme Court held that, in deciding a case involving another state's insurance contracts, Louisiana courts must (1) determine whether there is a difference between Louisiana insurance law and the other state's insurance law, and (2) if there is a difference, apply the choice-of-law analysis codified in La. Civ. Code arts. 3515 and 3537. The law that should be applied is the law of the state whose policies would be most seriously impaired if its law were not applied. The essence of the Supreme Court's instruction in *Champagne* is that Louisiana law should not

8

be used as a weapon to abolish valid insurance contracts between parties of states who contracted for specific terms required by other states and expected the other states' laws to apply to the contracts.

Sentry urges that under the mandatory *Champagne* analysis, Massachusetts law must be applied to construe the Massachusetts policy, and that the cases cited by the Wyatts on this point are distinguishable and inapplicable. It notes that since *Champagne,* Louisiana appellate courts and federal courts in Louisiana have uniformly followed the same equitable rule: where parties to the insurance contract expected the application of a certain state's law, and the policy was drafted to comply with that state's law, that state's law applies.

Sentry also argues that the policies of Massachusetts would be most seriously impaired if its law were not applied. When the *Champagne* rationale is applied here, it is clear that Massachusetts law must be applied to construe the Massachusetts policy:

- The parties to the contract, inVentiv and Sentry, expected that Massachusetts law would apply to the contract.
- The policy was tailored to comply with the specific, complex scheme of Massachusetts insurance law, including mandatory UM coverage not required in Louisiana.
- The premium was just over $20,000, calculated to cover the 51 vehicles principally garaged in Massachusetts. The AOS policy that covered the Wyatt vehicle, on the other hand, covered 3,455 vehicles and had a premium endorsement over $1.2 million.
- Applying the Louisiana UM statute to this policy would abrogate this valid Massachusetts contract in direct contradiction to the cases discussed above. The interest of Massachusetts in proper, uniform application of its insurance contracts, including this policy, outweighs the interest of Louisiana.

Sentry urges that the Wyatts' theory could abrogate all coverage to all inVentiv vehicles in 50 states. The argument that the Massachusetts policy should be rewritten to comply with Louisiana law could be made by any

9

person involved in an accident covered by the AOS policy, in approximately 3,500 vehicles across 49 states. The reverse is also true - parties involved in accidents covered by the Massachusetts policy could make the same argument against the AOS policy. If the Wyatts' theory was accepted, any person in any state could claim coverage under any policy by mixing and matching coverage for one state against the laws of another. The result would be chaos because coverage under all policies could be abrogated if each state's provisions did not comply with the law of every other state.

### *Validity of Louisiana UM Waiver*

The Wyatts claim there is an issue of material fact as to whether the individual who signed the UM rejection form for the AOS policy had the authority to sign on behalf of the named insured, and that authority from the parent company, inVentiv Group Holdings, Inc., was required to validly execute the UM waiver.

They argue that the Louisiana Supreme Court specifically noted it is a question of fact as to whether a non-employee and non-officer of a company could be determined to be the legal representative of the company for which he executed UM rejection forms where no formal authority was given to him. *Futch v. Comm. Union Ins. Co.,* 625 So. 2d 1019 (La. 1993).

The UM rejection form was signed by Deborah Harder ("Harder"), who the Wyatts argue was neither employed by inVentiv Group Holdings, Inc., nor specifically authorized to act on its behalf. Harder was an employee of inVentiv Health, Inc., a separate and distinct subsidiary. The Wyatts claim that Harder testified she was never given authority by inVentiv Group Holdings, Inc. to sign the UM rejection form and admitted she never

10

asked for authority to sign the UM rejection on behalf of the named insured. They further claim that inVentiv's corporate representative testified that the only way Harder had authority to execute the rejection forms was through the job description document, which she conceded was an inVentiv Health document, not an inVentiv Group Holdings document.

Sentry notes that UM coverage is mandatory on automobile liability policies issued in Louisiana, of at least the bodily injury liability limits, unless UM coverage is validly rejected by the insured. La. R.S. 22:1295(1)(a)(i). A properly completed and signed rejection form creates a rebuttable presumption that the insured knowingly rejected UM coverage. La. R.S. 22:1295(1)(a)(ii). A rejection must be made on a form prescribed by the commissioner of insurance.

Sentry argues that the Louisiana Supreme Court and many appellate courts have applied the UM statute, as well as the Commissioner's bulletins and forms, to establish clear rules for insureds to validly waive UM. In *Duncan v. USAA,* 06-363 (La. 11/29/06), 950 So. 2d 544, the Supreme Court established the steps required for a valid UM rejection, using the Commissioner's form in effect at that time. The Wyatts have not contested that the rejection form satisfies the *Duncan* requirements.

The fact that the AOS policy provided liability coverage for the Wyatt vehicle is undisputed. Sentry claims that the Wyatts appear to contradict this position by arguing that Sentry did not provide any evidence that the vehicle was "specifically insured" under the AOS policy, "as there was no evidence to support this position." It is also undisputed that the AOS policy includes no terms providing Louisiana UM coverage. The policy contains a

11

Louisiana UM rejection form that complies with all the Louisiana law requirements for a valid waiver.

Sentry claims that Harder had the authority to waive UM for all inVentiv entities. The Louisiana UM rejection form was executed by Harder, inVentiv's Vice President of Risk Management, on November 30, 2015, the day before the policy went into effect. All inVentiv entities, including inVentiv Group Holdings, Inc., had a single Risk Management Department. Harder was the Vice President of that department, and, in that capacity, she was the person authorized to waive UM for all inVentiv entities, including Kelley's direct employer, inVentiv Commercial Services LLC. As inVentiv's authorized representative, Harder signed the rejection form for all insureds. UM waivers executed by authorized corporate representatives are effective to waive UM coverage for all insureds on the policy. *E.g., Duke v. Evans,* 47,383 (La. App. 2 Cir. 8/8/12), 104 So. 3d 464, 467. A specific resolution authorizing the execution of the waiver by the representative is not required for the waiver to be valid. *See, e.g., Gunter v. State Farm Mut. Auto. Ins. Co.,* 2012-0562 (La. 5/4/12), 88 So.3d 444.

### Bad Faith

The Wyatts claim that Sentry acted in bad faith when Sentry's coverage denial was based on a misinterpretation of its policy. They argue this Court and the Louisiana Supreme Court have held an insurer must take the risk of misinterpreting its policy provisions – if it errs in interpreting its own insurance contract, such error will not be considered as reasonable ground for delaying payment of benefits, and it will not relieve an insurer of payment of penalties and attorney's fees.

12

Sentry urges that it is beyond question that Sentry's defenses in this case are reasonable and maintained in good faith - Louisiana UM was validly rejected on the policy that insured the vehicle and the Massachusetts policy unambiguously excludes coverage on that vehicle. They assert that the Wyatts' claim for penalties and attorney fees is meritless.

### Intent of the Parties

Sentry urges that inVentiv bought a policy specific to Massachusetts to comply with that state's complex, mandatory insurance laws and to ensure that its vehicles garaged in that state had valid coverage. The Massachusetts policy contains all terms needed to comply with Massachusetts law and no terms required under the laws of any other states. The policy provides UM coverage because it is mandatory in Massachusetts, and no UM waivers were executed for Louisiana or any other state where UM could be waived.

Sentry argues that, since the decision in *Champagne*, the Louisiana Supreme Court, this Court, and all Louisiana courts have refused to use Louisiana law to force parties from other states to provide insurance coverage where none was ever intended and never existed. Sentry claims the trial court was correct in its ruling not to impose Louisiana UM rejection requirements, which would result in forcing Sentry and inVentiv to provide retroactive coverage that was never requested, paid for, or ever existed.

### DISCUSSION

Summary judgments are reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is

13

entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Henderson v. State Farm Fire & Cas. Ins. Co.*, 10-0036 (La. App. 1 Cir. 7/16/10), 42 So. 3d 1140, citing *Smith v. Our Lady of the Lake Hospital, Inc.*, 93-2512 (La. 7/5/94), 639 So. 2d 730. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

La. C.C.P. art. 966 (D)(1) further provides as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Both the Wyatts and Sentry moved for summary judgment based on whether Sentry owed UM coverage to the Wyatts. The trial court denied the Wyatts' motion and granted Sentry's motion, finding there was no genuine issue of material fact since the AOS policy was clear that the vehicle driven by Kelley was not covered. Upon review of both motions, and the memoranda and supporting documents for each, we agree with the trial court's denial of the Wyatts' motion and granting of Sentry's motion.

This Court agrees with Sentry's logic as to the intent of the parties to the insurance contracts, Sentry and inVentiv. The court is to interpret the parties' intent in forming the contract. *Henderson*, *supra*, citing *Huggins v.*

14

*Gerry Lane Enterprises, Inc.*, 06-2816 (La. 5/22/07), 957 So. 2d 127.  In ascertaining the common intent of the insured and insurer, courts begin their analysis with a review of the words in the insurance contract.  *Henderson, id.*  Words in an insurance contract must be ascribed their generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning.  *Id.*  Moreover, an insurance contract is construed as a whole and each provision in the contract must be interpreted in light of the other provisions.  *Id.*  One provision of the contract should not be construed separately at the expense of disregarding other provisions.  *Id.*  When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written.  *Id.*

Not only must each provision in a contract be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole, but a doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.  La. C.C. art. 2050; La. C.C. art. 2053.  Sentry cites the decision in *Finkel*, *supra*, in which this Court reviewed multiple contracts *together* to determine the parties' intent.  This case is comparable to *Finkel*, and it is further supported by the Fifth Circuit's decision in *Niven v. Boston Old Colony Insurance Company*, 94-348 (La. App. 5 Cir. 11/16/94), 646 So. 2d 1108, in which the court found that the wording of *two* policies was clear and expressed the parties' intent that *one* of the two policies provided coverage.

15

There is much discussion by both the Wyatts and inVentiv regarding the interpretation of the Massachusetts policy and whether it provides coverage for Kelley's vehicle, including whether the Massachusetts policy exclusion does or does not apply based on the meaning of that provision's language, and whether Louisiana or Massachusetts law applies to the Massachusetts policy based on a conflict of laws determination. This Court believes that any detailed analysis of the terms of the Massachusetts policy, or a conflict of laws determination, is unnecessary and irrelevant.

It appears to be undisputed by the Wyatts and inVentiv, and we agree, that it is clear and unambiguous from the language of the policy that the parties to the insurance contracts, Sentry and inVentiv, intended for *only* the AOS policy to provide liability coverage on Kelley's vehicle. We determine that the intent of the parties is clear and unambiguous from the execution of the *group* of the three insurance contracts, that the AOS policy was to provide liability coverage for vehicles principally garaged in Louisiana, or for accidents occurring in Louisiana such that Louisiana laws apply.

The AOS policy is almost 500 pages and includes multiple endorsements for different states to address each state's specific laws and requirements. It includes an endorsement specifically applicable to Louisiana that refers to coverage for vehicles "licensed or principally garaged in … Louisiana." Under the description of which automobiles are covered, the AOS policy refers to the symbol "1" for "Any 'Auto'", but with the supplement schedule that specifically refers to the rejection of UM coverage in Louisiana. In addition, the exclusion in the AOS policy was clearly not met because there is no evidence that Kelley's vehicle was

16

principally garaged in Massachusetts or that the vehicle was specifically insured by the Massachusetts policy.

Further, when looking to the AOS policy executed *in conjunction with* the Massachusetts policy, the Massachusetts policy only contains 86 pages, refers only to Massachusetts law and no other states, and the symbol in the Massachusetts policy indicating which automobiles are covered is "6" for "Owned 'Autos' Subject To A Compulsory Uninsured Motorists Law." These characteristics clearly indicate the intent of Sentry and inVentiv that the Massachusetts policy provide coverage for vehicles "principally garaged" in Massachusetts and the AOS policy provide coverage for vehicles "principally garaged" in every other state, according to the general meaning of that term since it is not specifically defined in the policy. Kelley was a Louisiana resident, the rental vehicle was regularly kept in Louisiana, and the accident occurred in Louisiana. The Wyatts refer to these facts in support of their argument that Louisiana law apply. We believe that these same facts are supportive of Sentry's and inVentiv's intent that the AOS policy applies as to coverage of the vehicle.

We also conclude that Harder had the requisite authority to execute the Louisiana UM waiver form. We agree with Sentry that no corporate resolution is required for a representative to make a binding agreement on behalf of a company. Neither Sentry nor inVentiv, the actual parties to the contract, contest whether Harder had authority to execute the waiver. Further, the AOS policy refers to the risk management department as having the authority to make changes to the policy. As "Risk Manager" for all inVentiv entities, it is more than reasonable that she has authority to execute

any forms in connection with policy changes on behalf of the risk management department.

Qualification for UM coverage in Louisiana attaches to the person of the insured and only requires that an insured person be injured by an uninsured/underinsured motorist. *Henderson*, *supra*. The test to determine whether a person qualifies for UM coverage under a liability insurance policy is to ask whether they would be covered if they were at fault for the accident. *Id*. There is no doubt that Kelley would be covered under the AOS policy in the event she is at fault. The AOS policy is clear that it applies to Louisiana vehicles principally garaged in Louisiana. There is also no evidence whatsoever that the exclusionary provision in the AOS policy (essentially a mirror image of that in the Massachusetts policy) applies in this situation, as there is no evidence the vehicle is "principally garaged in Massachusetts" or that it is "specifically insured" under the Massachusetts policy. Therefore, the only UM coverage afforded to Kelley would be under the AOS Louisiana policy. However, inVentiv chose to waive that coverage.

## CONCLUSION

For the foregoing reasons, this Court determines that there is no genuine issue of material fact as to the issue of coverage. It is clear from both the AOS and Massachusetts policies that the parties to the contracts, Sentry and inVentiv, intended that any coverage for Kelley's vehicle was through the AOS policy, to the exclusion of the Massachusetts policy. The AOS policy governed any corresponding UM coverage and waiver thereof as to Kelley's vehicle, resulting in such that there was no UM coverage. At the Wyatts' costs, the judgment granting Sentry's motion for summary

18

judgment and denial of the Wyatts' motion for summary judgment is hereby

affirmed.

**AFFIRMED.**